UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-80059-CIV-COHN-SELTZER

INTRA-LOCK INTERNATIONAL, INC., a
Florida corporation,

     Plaintiff,

vs.

BOCA DENTAL SUPPLY, LLC,
a Florida limited liability company,

     Defendant.

_____/

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
### AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, INTRA-LOCK INTERNATIONAL, INC. ("Intra-Lock"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby moves this Honorable Court for the entry of a summary judgment against Defendant, BOCA DENTAL SUPPLY, LLC ("Boca Dental"), and as grounds therefore states:

### MEMORANDUM OF LAW

### INTRODUCTION

On its website and mailers sent throughout the United States, Boca Dental has waged a smear campaign against Intra-Lock.  In its deceitful advertisements, Boca Dental paints a picture of Intra-Lock as a company that sells unsafe dental surgery products and which has defrauded the government and routinely misleads its market of dental surgeons.  Nothing could be farther from the truth.  Intra-Lock has obtained all necessary regulatory approvals and clearances and, in fact, markets and sells safe dental surgery products.  Contrarily, despite its protestations as to Intra-Lock's safe and cleared medical devices, Boca Dental sells blood collection tubes for use in

surgery *that are not actually surgical tubes*.  Boca Dental's false and defamatory statements regarding Intra-Lock's products and its false statements regarding its own products must be enjoined by this Court and Boca Dental must pay Intra-Lock damages caused by Boca Dental's abusive and unfair competitive practices.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co., 240 F.3d 982, 991 (11th Cir. 2001).  Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether " 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Anderson, 477 U.S. at 251–52, 106 S.Ct. 2505).

## ARGUMENT

I.    **INTRA-LOCK IS ENTITLED TO SUMMARY JUDGMENT ON BOCA DENTAL'S COUNTERCLAIM**

Boca Dental's Amended Counterclaim (the "Counterclaim") against Intra-Lock raises claims under the Lanham Act for unfair competition (Counts I and III) and false and misleading advertising (Counts II and IV).  According to the Counterclaim, Boca Dental concedes that Intra-Lock has obtained, and advertises that it has, a Class II clearance for its IntraSpin System, a

medical device used for drawing and centrifuging a dental patient's blood to form a fibrin clot which is reinserted into the patient. However, the Counterclaim alleges that Intra-Lock provided false information to the FDA to obtain its Class II clearance (Counterclaim ¶ 14), thereby rendering "the FDA clearance for the Competing System [to be] improper" (Counterclaim ¶ 18) and, by extension, Intra-Lock's advertisements for same to be "false and misleading" (Counterclaim ¶ 19). Similarly, the Counterclaim alleges Intra-Lock's IntraSpin System is not as safe as the predicate device specified in its FDA submission, and consequently any advertising as to its safety is unfair competition and misleading (Counterclaim ¶ 14 and 20). Indeed, it is clear from both Boca Dental's Counterclaim (and as discussed in further detail below, its advertising), Boca Dental's primary complaint is not actually against Intra-Lock's advertising but, rather, its noncommercial (and, thus, nonactionable) representations to the FDA. In other words, Boca Dental does not factually allege any fraud. Rather, Boca Dental takes issue as to the application to the FDA for clearance and the disclosures actually made. Additionally, the Counterclaim is barred due to judicial estoppel and has been released by Boca Dental.

### A.    Boca Dental has released the claims raised in the Counterclaim.

The Prior Case culminated in a Confidential Settlement Agreement [D.E. 33] reached at mediation in which Boca Dental released all claims which could or should have been asserted in the suit. As set forth above, the Prior Case clearly involved PRF centrifuge systems and their component parts and the claims set forth in the Counterclaim could have been raised therein. To remove any doubt, Boca Dental, confirmed this understanding when it actually raised the issue in its deposition in the Prior Case [D.E. 18-1]. Accordingly, the claims raised by Boca Dental in the Counterclaim have been released in full. Consequently, Boca Dental's Counterclaim should be dismissed with prejudice as a matter of law. The general release also disposes of all affirmative defenses to Intra-Lock's Amended Complaint.

**B.**    <u>**The Counterclaim is barred due to judicial estoppel.**</u>

Boca Dental's Counterclaim is barred due to judicial estoppel given its identical and dispositive, contrary legal position in previous litigation between the parties.  Consequently, judicial estoppel compels the dismissal of Boca Dental's Counterclaim as to its FDA application process.  That is, despite Boca Dental advancing *and prevailing* on an argument that there is no such private right under the Food, Drug, and Cosmetic Act (FDCA) and consequently Intra-Lock cannot pursue unfair competition claims against Boca Dental based on *the lack of a decision* for clearance by the FDA, Boca Dental has attempted to violate that very restriction and pursue an alleged unfair competition claim against Intra-Lock where the FDA has *actually made a decision* regarding the FDA clearance of the IntraSpin System.

"Judicial estoppel is an equitable doctrine invoked by a court at its discretion to protect the integrity of the judicial process and to prevent a party from taking inconsistent legal positions to the prejudice of the opposing party."  <u>In re Amelia Island Co.</u>, No. 3:09-BK-09601-PMG, 2011 WL 1335856, at *4 (M.D. Fla. Apr. 7, 2011) (relying on <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749–50 (2001)).

> The Court looks primarily at three factors in determining whether to apply the doctrine of judicial estoppel: 1) whether the party's later position is clearly inconsistent with its earlier position; 2) whether the party succeeded in persuading a court to accept its earlier position so that the acceptance of an inconsistent position in a later proceeding would create the perception that the court has been misled; and 3) whether the party seeking to assert the inconsistent position would gain an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

<u>Id.</u>; <u>See also</u> <u>Ward v. AMS Servicing, LLC</u>, 606 Fed. Appx. 506, 509 (11th Cir. 2015) (noting that "[t]he purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."); <u>Warfield v. Stewart</u>, 434 Fed. Appx. 777, 783 (11th Cir. 2011).  Here, Boca Dental

previously took a position that claims such as those raised in the Counterclaim were not cognizable, persuaded another Court in this District to accept its position, and are now attempting to gain an unfair advantage on Intra-Lock by now asserting the exact opposite legal position.

In <u>Intra-Lock International, Inc. v. Choukroun, et al.</u>, No. 14-80930-CIV-BLOOM-VALLE (hereinafter "<u>Prior Case</u>"), Intra-Lock raised unfair competition claims against Boca Dental based on the fact it was advertising and selling a competing PRF centrifuge system *without first* obtaining the appropriate Class II clearance from the FDA.  In response to Intra-Lock's claim, Boca Dental successfully argued:

> The Plaintiff claims, instead, that the Defendants' "representations and sales tools, individually and in combination, imply that" both the individual components and completed device "carry all necessary FDA approvals and clearances for their advertised/intended uses."  (Motion at p. 10, citing Miller Dec., ECF No. 25-8, ¶ 20, Sakoff Dec., ECF No. 25-1, ¶¶29-32.)  Moreover, the Plaintiff claims that the mere fact that the Defendants' market and sell the device and its components in the United States "implicitly suggests that [it] carries appropriate FDA clearance." (Id. at p. 11.) Pursuant to Mylan, and its progeny, the Plaintiff lacks standing to enforce the FDA indirectly by bringing a Lanham Act claim for statements that are alleged to falsely imply FDA approval. As a result, the Plaintiff's Lanham Act claims should be dismissed.

Defendants' Consolidated Memorandum Opposing Plaintiff's Motion for Preliminary Injunction

[<u>Prior Case</u> D.E. 74 at 13].  Judge Bloom agreed with Boca Dental stating:

> Although Plaintiff's claims are brought pursuant to Section 43(a) of the Lanham Act, such allegations appear to be a thin attempt to circumvent the appropriate regulatory authority, the FDA.

> * * *

> One thing is abundantly clear. The FDA is the sole enforcer of the FDCA and private enforcement is prohibited: "[a]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. § 337(a);

\* \* \*

> Plaintiff has complained to the FDA on two separate occasions regarding Defendants' continued importation and marketing of the Competing Components and Device, yet the FDA has seemingly taken no action.  Indisputably, the FDA has not given an affirmative statement regarding the classification of the Competing Components or Device, and, as such, the Court will not impute misrepresentation onto Defendants' marketing and sales….   It is ultimately immaterial that Defendants may have admitted that the Competing Device performs the same function as Plaintiff's Device; the responsibility for that determination lies in the educated hands of the FDA.

\* \* \*

> These statements clearly evince Plaintiff's thinly veiled attempt to enforce the provisions of the FDCA through Section 43(a) of the Lanham Act.

See Order [Prior Case D.E. 134 at 15-17 and Note 8] (May 4, 2015) (emphasis added).  Boca Dental is therefore precluded as a matter of law from arguing both sides of this argument to suit its now current objective. Given that Boca Dental successfully argued a contrary legal position in the Prior Case, it is estopped from reversing its position and the Counterclaim must, therefore, be dismissed with prejudice.[1]

## C.   Intra-Lock's alleged misrepresentations are true statements.

Boca Dental's Counterclaim alleges that Intra-Lock has engaged in false advertising regarding the FDA clearance and safety of its products.  However, at its deposition, Boca Dental admitted that the *only* two representations in commercial advertising alleged to be false are, in fact, *true*.  Section 43(a) of the Lanham Act provides, in pertinent part:

> Any person who . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action

---

[1] And any suggestion by Boca Dental that a private right exists when the FDA makes a decision, but no such private right exist when there is no FDA decision does violence to the determination by Judge Bloom - that the FDCA "forbids private rights…when the FDA has not itself concluded that there was such a violation." Order [Prior Case D.E. 134].

by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a)(1)(B); Ameritox, Ltd. v. Millennium Laboratories, Inc., 889 F. Supp. 2d 1304, 1312 (M.D. Fla. 2012). Section 43(a) protects against a number of deceptive commercial practices, including false advertising or promotion. Ameritox, Ltd., 889 F. Supp. 2d at 1312 (citing Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1383 (5th Cir. 1996). The Lanham Act "is primarily intended to protect commercial interests" from being harmed by "the unfair competition created by a competitor peddling his wares using false or misleading advertising." Sandoz Pharmaceuticals v. Richardson-Vicks, Inc., 902 F.2d 222, 230 (3rd Cir. 1990); POM Wonderful LLC v. Coca-Cola Co., 134 S.Ct. 2228, 2235 (2014) ("The purpose of the Lanham Act's prohibition against misleading advertising or promotion is to protect persons engaged in commerce against unfair competition."); Mut. Pharm. Co. v. Ivax Pharm., Inc., 459 F. Supp. 2d 925, 932 (C.D. Cal. 2006) ("The central focus of the statute is to combat false representations in promoting a product in the marketplace.").

In order to make out a false advertising or promotion claim under § 1125(a)(1)(B), a proponent must prove the following five basic elements:

(1) in its . . . advertisement, defendant made false or misleading statements of fact about its product or the product of another;

(2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience;

(3) the deception is material, in that it is likely to influence the purchasing decision;

(4) defendant caused its falsely advertised goods to enter interstate commerce; and

(5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of good will which its products enjoy with the buying public.

Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004); Summit Tech., Inc. v. High-Line Medical Instruments, Co., 933 F. Supp. 918, 929 (C.D. Cal. 1996) (citing Cook, Perkiss & Liehe v. Northern Cal. Collection Serv., Inc., 911 F.2d 242, 244 (9th Cir. 1990)).

Prior to the end of written discovery in this matter, Boca Dental produced a single page of Intra-Lock's advertising, which formulated the basis of its claims (Deposition of Alvaro Betancur (hereinafter "Betancur Depo.", attached to Plaintiff's Statement of Undisputed Facts) at 13:19-25, 14:1-18, Ex. "B") (the "IL Advertising").[2]  According to Boca Dental, there are two false and/or misleading statements in the IL Advertising:  (1) that the 510k FDA clearance was obtained by providing misleading and/or false information to the FDA; and (2) that "L-PRF is a remarkable material that contains no additives." (Betancur Depo. at 19:14-25, 20:1-23).  With respect to the former, Boca Dental admitted that no regulatory determination has been made that Intra-Lock obtained its 510k clearance using false or misleading information (Betancur Depo. at 23:1-11).  In fact, Boca Dental has never even reported its concerns to the FDA, meaning the FDA's determination to grant the 510k clearance remains in tact (Betancur Depo. at 24:1-1-25, 25:1-10).  As to the latter statement, Boca Dental testified that said statement is, in fact, true (Betancur Depo. at 121:1-21).

Thus, Boca Dental has failed to establish that Intra-Lock's advertising is false and really only seems to take issue with the FDA process that permitted Intra-Lock to make these true

---

[2] At the deposition, Boca Dental attempted to produce additional evidence of Intra-Lock's alleged false advertising, which is the subject of a motion to exclude evidence filed concurrently herewith.

statements.[3]  Of course, the Lanham Act only applies to commercial advertising and, therefore, cannot apply to representations made to the FDA.   Accordingly, there is no genuine dispute as to any material fact on the Counterclaim and summary judgment should be entered in favor of Intra-Lock as a matter of law.

## II.    BOCA DENTAL HAS VIOLATED THE LANHAM ACT.

Counts I and II of the Amended Complaint raise unfair competition and false advertising claims against Boca Dental for misrepresenting the nature and quality of the parties' respective blood collection tubes.   In short, Boca Dental advertises that Intra-Lock's surgical blood collection tubes are unsafe and likely to result in the suspension of doctors' licenses and patient injury but that Boca Dental's blood collection tubes are suitable for performing surgical procedures and, in particular, very invasive PRF surgery.[4]

To reiterate, in order to make out a false advertising or promotion claim under § 1125(a)(1)(B)[5], a plaintiff must prove the following five basic elements:

---

[3] Rather, Boca Dental's counterclaim is designed to do nothing more than establish the truth of its own advertising regarding Intra-Lock's dealings with the FDA (Betancur Depo. at 14:19-22,121:1-12).  In this sense, the Counterclaim is not an affirmative claim at all but, rather, is an attempt to establish an affirmative *defense*.

[4] The PRF procedure requires an extraction of blood from the patient, which is then centrifuged to create a platelet rich fibrin (PRF) and reinserted back into the patient (Betancur Depo. at 63:4-10).

[5] The Lanham Act regulates actions that constitute "commercial advertising or promotion."  Ameritox, Ltd., 889 F. Supp. 2d at 1312. Accordingly, whether Defendants' representations were "commercial" in nature is a threshold to liability under the Act.  Id. at 1313. For representations to constitute "commercial advertising or promotion" they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services.  Id. The representations need not be made in a "classical advertising campaign," but may instead consist of more informal types of "promotion" sufficiently disseminated to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.  Id. (citing VG Innovations, Inc. v. Minsurg Corp., No. 8:10-cv-1726-T-33MAP, 2011 WL 1466171, at *5

(1) in its . . . advertisement, defendant made false or misleading statements of fact about its product or the product of another;

(2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience;

(3) the deception is material, in that it is likely to influence the purchasing decision;

(4) defendant caused its falsely advertised goods to enter interstate commerce; and

(5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of good will which its products enjoy with the buying public.

Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004); Summit Tech., Inc. v. High-Line Medical Instruments, Co., 933 F. Supp. 918, 929 (C.D. Cal. 1996) (citing Cook, Perkiss & Liehe v. Northern Cal. Collection Serv., Inc., 911 F.2d 242, 244 (9th Cir. 1990)).

Boca Dental has admitted that its advertising of the following is false:

- That doctors' licenses and patients' lives are put at risk by using the IntraSpin System and/or Intra-Lock's blood collection tubes [D.E. 23-2, 23-3, 23-5].  Boca Dental is aware of no doctors' licenses that have been suspended or revoked as a result of using the IntraSpin System (Betancur Depo. at 31:16-24).  Further, the only patient injury of which Boca Dental is aware is of one of its principal's own *unidentified* patients and in which he *assumed* it was the result of the IntraSpin System (Betancur Depo. at 31:25, 32:1-25, 33:1-14, 34:6-9).

---

(M.D. Fla. Apr. 18, 2011). Commercial speech encompasses not merely direct invitations to trade, but also communications designed to advance business interests." Id. Boca Dental's website and mailers unquestionably constitute commercial advertising and promotion for the purposes of Section 43(a), and render Defendants subject to liability under the Act.

- That Intra-Lock had sued Boca Dental for infringing a patent [D.E. 23-5].  In fact, the lawsuit to which reference is made, the Prior Case, was also a false advertising suit raising no claims regarding any intellectual property [Prior Case, D.E. 1]. Further, at best, Boca Dental seemed to actually be referring to a trademark (not a patent) although, for whatever reason, it continued to advertise to the market of dentists that Intra-Lock was enforcing its patent rights against PRF centrifuge manufacturers and distributors (Betancur Depo. at 27:10-25, 28:1-25, 29:1-25).

Further, no reasonable juror would believe Boca Dental's explanations with respect to its advertising related to the suitability of its blood collection tubes for use in performing PRF surgery.  To be clear, Boca Dental agrees that the PRF procedure is "a very invasive procedure" (Betancur Depo. at 63:18-20) and that if products are marketed along with a system to perform same, such would require a Class II (510k) clearance from the FDA (Betancur Depo. at 65:9-18). And, although Boca Dental does not have a Class II clearance for its blood collection tubes or any PRF centrifuge system (Betancur Depo. at 31:3-5), for whatever reason, it believes that the "specials" it advertises containing all components for performing the PRF procedure is not a "system" *even though it sells those "specials" to dental surgeons so that they can perform the invasive PRF procedure* (Betancur Depo. at 68:15-19).  Further, Boca Dental's blood collection tubes are clearly marked as IVD for In Vitro Diagnostic use *outside* the body (i.e. non-surgical) (Betancur Depo. at 92:14-20, 95:19-25, 96:1-3) yet are sold to dental surgeons throughout the United States (Betancur Depo. at 97:5-8) for use in surgery (Betancur Depo. at 100:24-25, 101:1-4) and are necessarily invasive when used for such purpose (Betancur Depo. at 165:2-15). Frankly, Boca Dental's explanation as to why it can properly advertise its blood collection tubes for use in surgery is nonsense and no credit should be given to same.  See Andersen v. United

11

States, 09-60364-CIV-GOLD, 2009 WL 6633307, at *3 (S.D. Fla. 2009) ("where no reasonable juror could find in the non-moving party's favor, summary judgment is appropriate.")

Additionally, Boca Dental has confirmed that the market of dental surgeons to which its products are marketed believe these representations (Betancur Depo. at 126:9-25, 127:1-4) and, thus, those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience.  Boca Dental further admitted that its advertising is material to dentists' purchasing decisions and were designed to get customers to buy Boca Dental's products instead (Betancur Depo. at 38:5-25, 39:1-5, 127:24-25, 128:1-17).  In fact, after hearing Boca Dental's rhetoric, customers would want to return or trade the IntraSpin System and start purchasing Boca Dental's blood collection tubes (Betancur Depo. at 54:15:24, 127:24-25, 128:1-17).  Boca Dental also admitted that it engages in interstate commerce (Betancur Depo. at 48:4-17, 97:5-8).  Finally, as reflected above, Intra-Lock has been damaged due to a diversion of sales to Boca Dental and, further, Intra-Lock's goodwill has been lessened as a result (Declaration of Dr. Thierry Giorno (hereinafter "Giorno Dec.", attached as Exhibit "A" to Plaintiff's Statement of Undisputed Facts) at ¶ 22).  Accordingly, as there is no genuine dispute as to these material facts, summary judgment should be entered in favor of Intra-Lock.

## III.  BOCA DENTAL HAS ENGAGED IN UNFAIR COMPETITION UNDER THE COMMON LAW.

Boca Dental's misrepresentations regarding the nature and quality of Intra-Lock's products and Boca Dental's products also constitute unfair competition under Florida law.  "A claim of unfair competition in Florida arises under the common law and, while elusive of precise definition, requires a plaintiff to prove, at minimum, competition and *unfairness*." Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc., 444 F.3d 1356, 1362 (Fed. Cir. 2006); see also Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc., 432 F. Supp. 2d 1319,

1353 (S.D. Fla. 2006); <u>Practice Management Associates, Inc. v. Old Dominion Ins. Co.</u>, 601 So. 2d 587, 588 (Fla. 1st DCA 1992) ("Even giving the phrase 'unfair competition' its broadest ordinary meaning, the offense must include at least two elements, 'unfairness' and 'competition.'").  "Under Florida law, unfair competition acts as an 'umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practices in industrial or commercial matters.'"  <u>Stoneworks v. Empire Marble & Granite, Inc.</u>, 49 U.S.P.Q.2d 1760 (S.D. Fla. 1998).  In other words, common law unfair competition prohibits unethical business practices.  <u>See id.</u> ("unfair competition is a broad concept, focusing on 'fair play,' and aiming 'to promote higher ethical standards in the business world.'"); <u>R.L. Winston Rod Co. v. Sage Mfg. Co.</u>, 838 F. Supp. 1396, 1399 (D. Mont. 1993) ("State unfair competition laws are designed to promote ethical business practices."); <u>Norwich Pharmacal Co. v. Sterling Drug, Inc.</u>, 167 F.Supp. 427, 429 (N.D.N.Y. 1958) <u>reversed on other grounds</u> 271 F.2d 569 ("[e]xistence of unfair competition is question to be decided upon particular facts of each case with appreciation of necessity for free competition within limits of ethical business practices.")

As set forth above, Boca Dental has engaged in unfair competition with Intra-Lock by misrepresenting the nature of and characteristics of Intra-Lock's medical devices as well as Intra-Lock's business ethics.  Boca Dental has further unfairly competed with Intra-Lock by misrepresenting the nature and characteristics of Boca Dental's medical devices as being suitable for invasive PRF procedures when, in fact, such is not the case.  Accordingly, as there is no genuine dispute as to these material facts, summary judgment should be entered in favor of Intra-Lock.

**IV.    BOCA DENTAL HAS ENGAGED IN DEFAMATION OF INTRA-LOCK.**

Boca Dental has engaged in the defamation of Intra-Lock.  "Defamation has the following five elements: (1) publication; (2) falsity; (3) actor must act with knowledge or

reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." <u>Jews For Jesus, Inc. v. Rapp</u>, 997 So. 2d 1098, 1106 (Fla. 2008).  A statement is considered defamatory if it creates "hatred, distrust, ridicule, contempt, or disgrace".  <u>See</u> <u>id.</u> at 1115.

As set forth above, Boca Dental has negligently and/or recklessly published false statements regarding the safety of Intra-Lock's medical devices and Intra-Lock's representations to the government.  Said statements are based entirely on speculation.  The statements are defamatory in that they are designed to do nothing more than to create distrust for Intra-Lock (Betancur Depo. at 127:24-25, 128:1-25, 129:1-11). Finally, as reflected above, Intra-Lock has been damaged due to a diversion of sales to Boca Dental and, further, Intra-Lock's goodwill has been lessened as a result (Giorno Dec. at ¶ 22).  Accordingly, as there is no genuine dispute as to these material facts, summary judgment should be entered in favor of Intra-Lock.

## V.   SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF INTRA-LOCK ON BOCA DENTAL'S AFFIRMATIVE DEFENSES

Boca Dental has raised several affirmative defenses [D.E. 28].  However, the basis for each defense is based on the same general defenses addressed above regarding Intra-Lock's advertising (Betancur Depo. at 162:23-25, 163:1-12), which as set forth above have been released as a result of the Confidential Settlement Agreement [D.E. 33] from the Prior Case. Although the release contained therein is dispositive, each affirmative defense is addressed in turn:

### A.   First Affirmative Defense

As its First Affirmative Defense, Boca Dental asserts that Intra-Lock's claims are barred due to the truth of Boca Dental's representations.  However, as set forth above, Boca Dental has admitted that its advertising is false.  Accordingly, this defense fails as a matter of law.

**B.**      **Second Affirmative Defense**

As its Second Affirmative Defense, Boca Dental asserts that the statements subject to this lawsuit "are immune from civil prosecution under qualified privileged" and were made to warn others about the alleged harm and danger of Intra-Lock's products.  However, as set forth above, Boca Dental has admitted that it made the statements at issue in order to promote its products and divert sales from Intra-Lock.  Accordingly, the factual basis for this defense is unsupported and, therefore, the defense fails as a matter of law.[6]  Moreover, to whatever extent this defense may apply to Intra-Lock's claim for defamation, there is no authority to suggest that same would operate to defeat Intra-Lock's other claims, including those raised under the Lanham Act.

**C.**      **Third  Affirmative Defense**

As its Third Affirmative Defense, Boca Dental asserts that Intra-Lock's claims for equitable relief are barred because Intra-Lock alleges an adequate remedy at law.  Of course, Intra-Lock is entitled to plead in the alternative, Fed. R. Civ. P. 8(d)(2)-(3), and this defense does not serve to defeat Intra-Lock's claims.

**D.**      **Fourth, Fifth, and Sixth  Affirmative Defense**

---

[6] In any event, "[t]he elements of qualified privilege are: good faith, an interest to be upheld, a statement limited in scope to a specific purpose, published on a proper occasion, and published in a proper manner."  See Shaw v. R.J. Reynolds Tobacco Co., 818 F. Supp. 1539, 1542 (M.D. Fla. 1993), aff'd sub nom. Shaw v. Reynolds Tobacco Co., 15 F.3d 1097 (11th Cir. 1994).  Boca Dental has altogether failed to meet these elements and has abused the privilege by acting with express malice.

As its Fourth, Fifth, and Sixth Affirmative Defenses, Boca Dental asserts that Intra-Lock's claims are barred as a result of Intra-Lock's unclean hands, waiver, or estoppel in allegedly engaging in false and misleading advertising and providing false information to the FDA.  However, as set forth above, Boca Dental has admitted that Intra-Lock's advertising is truthful and there is no evidence that Intra-Lock provided false information to the FDA. Accordingly, these defenses fail as a matter of law.

### E.      **Seventh Affirmative Defense**

As its Seventh Affirmative Defense, Boca Dental asserts that Intra-Lock has failed "to state a claim upon which relief can be granted because Intra-Lock does not properly allege representations of fact by Defendant that misrepresent the nature, characteristics, qualities or geographic origin of Plaintiff's products."   However, as pointed out above, Intra-Lock has established every element of its claim for false advertising, including that Boca Dental has made false and misleading statements regarding Intra-Lock's blood collection tubes and IntraSpin system.  Accordingly, this defense fails as a matter of law.

### F.      **Eighth Affirmative Defense**

As its Eighth Affirmative Defense, Boca Dental asserts that, to the extent its Amended Counterclaim is barred by the mutual release set forth in the Confidential Settlement Agreement [D.E. 33], Intra-Lock's claims must also be barred.  This simply is not true.  As set forth above, the Amended Counterclaim has been asserted against Intra-Lock despite Boca Dental's actual knowledge of said claims during the pendency of the Prior Case and, as a result, have been released.  Intra-Lock's claims, however, are based on incidents occurring and false statements made by Boca Dental *after* the resolution of the Prior Case (Giorno Dec. ____).  Accordingly, although Boca Dental's claims are barred by the mutual release, Intra-Lock's claims simply are not.

### G.    Ninth Affirmative Defense

As its Ninth Affirmative Defense, Boca Dental asserts that Intra-Lock's claims are barred based on its own argument raised in Plaintiff's Motion to Dismiss Amended Counterclaim that violations of the Food, Drug, and Cosmetic Act are reserved to the discretion of the FDA.  To whatever extent same may have been an issue in this case, the point was put to rest in the Court's Order Denying Motion to Dismiss [D.E. 59], in which the Court stated that "the FDCA does not preclude Defendant's counterclaims under the Lanham Act."  In any event, Intra-Lock does not seek to enforce the FDCA through its claims in this case.  Rather, it seems to enjoin Boca Dental's false and misleading advertising regarding the safety of the parties' respective blood collection tubes.  Accordingly, this defense fails as a matter of law.

## VI.    INTRA-LOCK IS ENTITLED TO A PERMANENT INJUNCTION.

Due to the foregoing misconduct on the part of Boca Dental, Intra-Lock is entitled to permanent injunction against further unfair competition and disparagement.  As recognized in this District:

> As part of its "long-recognized, inherent equitable powers," a federal court may issue "traditional" injunctive relief "as either an interim or permanent remedy for certain breaches of common law, statutory, or constitutional rights." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir.2004). "A district court may grant [preliminary] injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir.2000) (en banc) (per curiam). The standard for issuing a permanent injunction is identical, except that the plaintiff must show actual success on the merits instead of a likelihood of success, and most courts do not consider the public interest element in deciding whether to issue a permanent injunction. See Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); Klay, 376 F.3d at 1098.

<u>Rubenstein v. Florida Bar</u>, 72 F. Supp. 3d 1298, 1318 (S.D. Fla. 2014).

Boca Dental's acts have irreparably injured Intra-Lock and such injury will continue until and unless Boca Dental is permanently enjoined by this Court.  Boca Dental will not be injured by the issuance of an injunction enjoining its unfair competition and false advertising and an appropriate injunction would serve the public interest.  Indeed, Boca Dental cannot be harmed by being prevented to do what it had no right to do.  <u>See</u> <u>Tiramisu Int'l LLC v. Clever Imports, LLC</u>, 741 F. Supp. 2d 1279, 1287-88 (S.D. Fla. 2010) (holding that balance of harms favored injunction to stop Lanham Act violation where infringing defendant had no right to use the subject mark, and "therefore could suffer no legitimate hardship by being forced to stop that which it had no right to do").  Accordingly, Intra-Lock is entitled to a permanent injunction against Boca Dental's continued unfair competition, false advertising, and defamatory statements.

In addition, Intra-Lock requests the Court order Boca Dental to issue a press release and have its website reflect this Court's decision and place corrective advertisements regarding the safety of Intra-Lock's medical devices and the unfitness of Boca Dental's products.  <u>See</u> <u>Abbott Labs. v. Mead Johnson & Co.</u>, 971 F.2d 6, 19 (7th Cir. 1992) ("As noted, some forms of intermediate relief, such as ordering Mead to purge the false aspects of its promotional campaign and issue corrective advertising, would leave Ricelyte a viable competitor. In fact, such relief would serve, rather than disserve, the public interest in truthful advertising, an interest that lies at the heart of the Lanham Act"); <u>Bracco Diagnostics, Inc. v. Amersham Health, Inc.</u>, 627 F. Supp. 2d 384, 479 (D.N.J. 2009) ("Corrective advertising is appropriate when, as here, a defendant is making false claims about its product that bear on the public health").

## <u>CONCLUSION</u>

Apparently unable to compete fairly and unable to deliver its customers a quality product, Boca Dental has resorted to smearing Intra-Lock's good name and disparaging the quality of its FDA-cleared medical devices.  For the reasons stated above, Boca Dental's unfair competition must come to an end.

WHEREFORE, Plaintiff, INTRA-LOCK INTERNATIONAL, INC., respectfully requests this Court:

(a)      permanently enjoin Boca Dental from making any statement or representation whatsoever, or performing any act, which could or is likely to lead relevant consumers or the public, or individual members thereof, to believe that Intra-Lock has defrauded the United States or any other government;

(b)      permanently enjoin Boca Dental from making any statement or representation whatsoever, or performing any act, which could or is likely to lead relevant consumers or the public, or individual members thereof, to believe that Intra-Lock's medical devices including, without limitation, the Intra-Spin System  and related blood collection tubes, have not received any and all appropriate regulatory approvals and clearances for the intended use in surgery;

(c)      permanently enjoin Boca Dental from making any statement or representation whatsoever, or performing any act, which could or is likely to lead relevant consumers or the public, or individual members thereof, to believe that Intra-Lock's medical devices including, without limitation, the Intra-Spin System and related blood collection tubes, are in any way unsafe and/or unsuitable for surgery;

(d)    permanently enjoin Boca Dental from making any statement or representation whatsoever, or performing any act, which could or is likely to lead relevant consumers or the public, or individual members thereof, to believe that its medical devices and, in particular, its Blood Collection Tubes Steri-Pack are safe for use in blood collection or dental surgery;

(e)    require Boca Dental to immediately issue a press release and have its website reflect this Court's decision and place corrective advertisements regarding the safety of Intra-Lock's products, the full and fair disclosures made by Intra-Lock to the United States government; and the unfitness of Boca Dental's products for surgery;

(f)    require Boca Dental to disgorge its profits to Intra-Lock in an amount to be determined in the future;

(g)    order all such other and further relief in favor of Intra-Lock as the Court deems appropriate and just.

**DICKINSON WRIGHT PLLC**
450 East Las Olas Blvd., Suite 730
Fort Lauderdale, FL 33301
Tel.:  (954) 991-5420
Fax:  (844) 670-6009

/s/  Alan J. Perlman, Esq.
Alan J. Perlman, Esq.
Florida Bar No. 826006
Vijay G. Brijbasi, Esq.
Florida Bar No. 15037
E-mail: aperlman@dickinsonwright.com
vbrijbasi@dickinsonwright.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 3, 2017, I electronically filed the foregoing document with the Clerk of the Court using *CM/ECF*.  I also certify that the foregoing is being served this day upon all counsel of record or *pro se* parties identified in the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by *CM/ECF* or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Alan J. Perlman
Alan J. Perlman, Esq.
Florida Bar No. 826006

## SERVICE LIST

Andrew T. Lavin, Esq.
Lavin Law Group, P.A.
2670 NE 215th Street.
Miami, Florida  33180
Phone: (954) 967-2788
Fax: (954) 983-7021
alavin@lavinlawyers.com
*(VIA CM/ECF)*